DECISION AND JUDGMENT ENTRY
{¶ 1} Gregory Hinckley appeals his convictions by the Huron County Court of Common Pleas following a jury verdict finding him guilty of having a weapon under disability, tampering with evidence, attempted tampering of evidence and two counts of aggravated robbery. Because there was sufficient evidence on Hinckley's identity as the person who committed the aggravated robberies, we affirm.
 {¶ 2} On the afternoon of November 17, 2002, first the Cindy's Video store and then the Hy-Miler store in Huron County were robbed. Both clerks described the robber as a slender male, who wore a red flannel shirt, a cap on his head, and a mask over his face.
 {¶ 3} Hinckley was indicted for these events on December 16, 2002 in case number CRI-2002-1040 on two counts of aggravated robbery, two counts of robbery, one count of having a weapon under disability, and one count of possession of heroin. He was later indicted on February 21, 2003 of tampering with evidence and attempted tampering with evidence in case number CRI-2003-0177. Both cases were consolidated under case number CRI-2002-1040 and were tried to a jury on April 15 — 17, 2003. At the close of the state's case, Hinckley made a Crim.R. 29 motion for acquittal on the drug possession charge, the attempted tampering with evidence charge and the aggravated robbery and robbery charges. The trial court granted Hinckley's motion for acquittal on the drug possession charge but denied it on the remaining charges. The jury found Hinckley guilty on all of the remaining counts. At the sentencing hearing, the trial court found that the robbery counts were allied offenses of the aggravated robbery counts. Hinckley was sentenced to seven years on each aggravated robbery count, ten months for having a weapon under disability, two years on the tampering with evidence charge and twelve months on the attempted tampering with evidence charge. The aggravated robbery counts were ordered to be served consecutively to each other and the remaining counts concurrently with the first aggravated robbery count for a total prison term of fourteen years.[1] Hinckley raises the following assignment of error of appeal:
 {¶ 4} "The appellant's convictions should be reversed since the same were based on insufficient evidence."
 {¶ 5} While not assigned as error, the arguments in the brief also appear to challenge the manifest weight of the evidence as well.[2] Therefore, we will address both claims.
 Sufficiency of the Evidence {¶ 6} Hinckley contends that there is insufficient evidence that he was the person who robbed Cindy's Video and Hy-Miler. Hinckley moved for judgment of acquittal on the aggravated robbery, robbery and attempted tampering of evidence counts at the close of the state's case. After the trial court denied his motion on these counts, Hinckley testified in his own defense. He did not, however, renew his Crim.R. 29 motion at the close of all the evidence and, therefore, has waived any error regarding the sufficiency of the evidence. State v. Wohlgamuth (Dec. 21, 2001), 6th Dist. No. WD-01-012; State v. Stevenson (July 21, 2000), 6th Dist. No. E-94-002.
 {¶ 7} Even though Hinckley failed to preserve this issue for appeal, after reviewing his argument, we conclude nevertheless that there was sufficient evidence as to identity. "Sufficiency" of the evidence is a question of law on whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 8} At trial the state presented the testimony of Matthew Thornton who testified that on the evening of November 17, 2002, he went to Hinckley's residence to smoke marijuana. While there, Hinckley asked Thornton to hold his BB gun and .22 rifle for him but was told Thornton would not take the rifle. Thornton took Hinckley's BB gun home with him. A few days later, the police executed a search warrant and seized the BB gun which was admitted as state's exhibit one.
 {¶ 9} Kim Codeluppi testified that she was working at Cindy's Video on the afternoon of November 17, 2002 when a man came in wearing a mask over his mouth, a snow hat and a red flannel shirt. The man told her "This is a stick up." She described the robber as about six feet tall and skinny. Codeluppi also testified that when she heard the tape of Hinckley talking she recognized his voice. In addition, she identified state's exhibit one as the gun used in the robbery. While Codeluppi acknowledged she told the police that the robber had blonde or light colored hair, she stated that because the robber was wearing a snow hat and mask she could not actually see the robber's hair.
 {¶ 10} Jim Horning testified that he lives near the Hy-Miler store and on the afternoon of November 17, 2002, he saw a vehicle on the east side of the Hy-Miler building drive up, then back up repeatedly. He described the vehicle he saw "casing" Hy-Miler as an older model, two-door, brown Ford LTD Crown Victoria. He also testified that the license plate number had a "C" in it. Several witnesses testified that Hinckley was in possession of a brown Ford LTD which matched Horning's description. The license plate on Hinckley's vehicle began with a "C."
 {¶ 11} Judy Stumpf testified that while she was working at the Hy-Miler gas station on November 17, 2002, she received a call from Jim Horning who stated that a brown Ford LTD appeared to be "casing" the store. Horning then warned her that the driver was on his way into the store. Like Codeluppi, Stumpf testified that a man wearing a white dust mask, winter hat, and blue t-shirt underneath a red flannel shirt robbed the store and identified state's exhibit one as the gun used during the robbery. She also described the robber as having a slender build but said the robber was 5'8" and had blonde highlights.
 {¶ 12} Officer Bracken testified that Heath Denger, an inmate of the Huron County Jail at the same time as Hinckley, informed him that Hinckley admitted that he committed the robberies. Bracken outfitted Denger with a wire and asked Denger to engage Hinckley in conversation, which he did. A tape of the conversation was played for the jury. Hinckley initially maintained that "John" and "Timmy" were the persons responsible for the robberies but he did tell Denger what evidence the police had on him. Hinckley's story changed from non-involvement to being the driver for "John" and then to doing the robberies by himself. Hinckley told Denger where he parked the car for both robberies and that no one could identify him because his face was covered.
 {¶ 13} Finally, Esteban Morales testified that while incarcerated in the Huron County Jail he shared an area with Hinckley. Hinckley admitted to him that he robbed Cindy's Video and Hy-Miler. Morales also stated that Hinckley expressed regret for the video store robbery because the clerk was a young girl.
 {¶ 14} Hinckley argues that neither clerk could positively identify him at trial as the robber. He also contends that he does not fit their descriptions of the robber because he does not have light colored hair or blonde highlights. Finally, he claims that his alleged admissions to two fellow inmates of the Huron County Jail were consistent with his testimony that he was merely reciting to them what the officers had told him about the robberies. As a result, he maintains that the evidence was insufficient to establish that he was the robber.
 {¶ 15} When determining the sufficiency of the evidence, however, we must construe the evidence in a light most favorable to the state. While neither clerk could identify him, Hinckley's height and body build is similar to the clerks' descriptions of the robber. In addition, there is evidence that Hinckley's car and BB gun are similar to the ones used in the robberies. Hinckley's arguments that Morales' testimony was not credible and that it is consistent with Hinckley's contention that he was merely reciting what the police told him also fail. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. Bryan,101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 116 citing State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Morales testified that Hinckley admitted he robbed Cindy's Video and Hy-Miler and several statements from the taped conversation with Denger also can be construed as admissions. We, therefore, find that there is sufficient evidence to support Hinckley's convictions.
 Manifest Weight of the Evidence {¶ 16} The concept of manifest weight of the evidence differs from that of sufficiency of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. Thompkins, supra, at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has explained the standard to be applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 17} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. citing Tibbs v. Florida (1982), 457 U.S. 21,42.
 {¶ 18} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 19} Hinckley bases his argument that his convictions should be reversed on the fact that the eyewitnesses could not actually identify him as the robber and that his supposed admissions are consistent with his trial testimony that he was merely reciting what the police had told him. "The trier of fact who sees and hears the witnesses is particularly competent to decide `whether, and to what extent, to credit the testimony of particular witnesses,' and thus we must show substantial deference to its determinations of credibility." State v.Blaich, 2d Dist. No. 20007, 2004-Ohio-4259, at ¶ 12 citing Statev. Lawson (Aug. 22, 1997), 2d Dist. No. 16288.
 {¶ 20} The jury was not required to believe Hinckley's testimony that he was only repeating to Denger what the police had told him and that he never spoke with Morales. The jury was entitled to believe that the unqualified statements about where he parked the car for each robbery and that no one could identify him because his face was covered were admissions of guilt. In addition, there was circumstantial evidence linking Hinckley to the crime. We, therefore, find that Hinckley's convictions were not against the manifest weight of the evidence.
 {¶ 21} Hinckley's sole assignment of error is not well-taken. The judgment of the Huron County of Common Pleas is affirmed. Pursuant to App.R. 24, court costs are assessed to appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Lanzinger, J., Concur.
[1] Hinckley's sentence was also ordered to be served consecutively to his 11 month sentence on the probation violation in case number CRI-2000-0687.
[2] In his brief, Hinckley acknowledges that there is some evidence to support the state's case. Thus, it appears that Hinckley is really arguing that his conviction was against the manifest weight of the evidence.