OPINION
{¶ 1} Defendant-appellant Isaac Talley appeals his sentence and conviction on one count of assault of a corrections officer entered in the Richland County Court of Common Pleas following a jury trial.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 {¶ 3} This is an accelerated calendar case, submitted to this Court on the record and the briefs of the parties.
 STATEMENT OF THE FACTS AND CASE {¶ 4} On January 12, 2006, the Appellant Isaac Talley was indicted by the Richland County Grand Jury for one count of assault on a corrections officer, a felony of the fifth degree.
 {¶ 5} Appellant's case was initially scheduled for a jury trial on June 15, 2005; however, due to conflicts with other cases proceeding to trial, the trial court issued several sua sponte continuances. Appellant's trial counsel did not object to these continuances, and no motion to dismiss for a speedy trial violation was ever filed.
 {¶ 6} Appellant's jury trial was ultimately held on October 26, 2006. During the trial, the State presented testimony from seven witnesses. The evidence presented by the State included the following:
 {¶ 7} On August 16, 2005, Sergeant Dennis Minard was performing his usual duties as a corrections officer at the Mansfield Correctional Institution. On that date, he was conducting hearings with inmates who had received conduct reports. (T. at 112). One of those inmates was Appellant Isaac Talley. Appellant had received a conduct report because his hair was longer than institutional rules permitted. (T. at 113-114) *Page 2 
 {¶ 8} Sgt. Minard met with Appellant alone in his office to conduct the hearing. (T. at 113). According to Sgt. Minard, when he told Appellant that he would need to cut his hair or his case would be referred to the Rules Infraction Board ("R.I.B."), Appellant became combative and verbally abusive. (T. at 115, 117). Appellant told Sgt. Minard that he was "dogging the brothers." (T. at 115). Sgt. Minard stated that he then ordered Appellant to leave his office and return to his cell. Appellant refused to leave the office and told Sgt. Minard that he would have to "put him out." (T. at 115-116). Sgt. Minard testified that such argument continued as he and Appellant exited the office. As a result of Appellant refusing a direct order, Sgt. Minard ordered him to face the wall and submit to being handcuffed. (T. at 116). Appellant initially complied; however, when Sgt. Minard attempted to put the handcuff on his arm, Appellant spun around and punched him in the face. (T. at 116, 161). The blow knocked Sgt. Minard's radio off of his shoulder and onto the floor. (T. at 161). While Sgt. Minard was dazed from the blow to the face, the Appellant placed him in a bear hug, pinning his arms to his sides. (T. at 116, 124, 161).
 {¶ 9} In addition to the testimony of Sgt. Minard, two other corrections officers witnessed the assault. CO. Antoinette Gross testified that she was working as a corrections officer assigned to pod 4-A on August 16, 2005. (T. at 147). On that date, she was getting ready to pass out supplies to the inmates when she heard an argument between Appellant and Sgt. Minard. (T. at 148). She indicated that when Sgt. Minard came out of his office with Appellant, she heard the Appellant say "[y]ou ain't shit." (T. at 148). CO. Gross stated that she also heard Appellant refuse to turn around and be handcuffed. (Id.). At that point, she decided to assist Sgt. Minard in cuffing the Appellant. (T. at 148-149). She stated that while she was attempting to assist Sgt. *Page 3 
Minard, she observed Appellant grab Sgt. Minard around the top of his arm and slam him to the floor, causing his face to strike the concrete floor. (T. at 150, 155-156). CO. Gross indicated that she did not actually observe the Appellant punch Sgt. Minard; however, her attention was focused on trying to get the Appellant cuffed, and she was not focused directly on what was occurring between Appellant and Sgt. Minard. (T. at 151-152).
 {¶ 10} CO. Gross further testified that the incident lasted around five minutes, but it felt like it was longer. (T. at 150). She indicated she did not observe any injuries to Appellant, but that Sgt. Minard's nose and mouth were bleeding and he had blood on his shirt. (T. at 150-151). The other sergeants assisted Sgt. Minard to the infirmary because he was "sort of dazed from his head hitting the floor." (T. at 151). As a result of the altercation, CO. Gross indicated she suffered scratches on her elbow, and her back was sore. (T. at 151).
 {¶ 11} CO. Cheryl Williams also testified that she observed the altercation between Appellant and Sgt. Minard. She indicated at the time of the incident she was working at the desk in pod 4-A with CO. Gross (T. at 159). CO. Williams testified that she observed Sgt. Minard exit his office with the Appellant. (T. at 160). She could hear them talking back and forth, but it was not a loud conversation. (T. at 160). However, it caught her attention when she heard Sgt. Minard say "I'm giving you a direct order to get cuffed up and get to your cell." (T. at 160). At that point, CO. Williams testified that she walked over to the area were Sgt. Minard was standing, and listened. (T. at 160). She heard Sgt. Minard again command that the Appellant "get cuffed," and saw him reach behind his back to get his handcuffs out of the nylon pouch on his belt. (T. at *Page 4 
160). CO. Williams testified that while Sgt. Minard was reaching for his handcuffs, Appellant turned around and hit him, knocking the microphone off his shoulder. (T. at 161). She indicated that she saw Appellant strike Sgt. Minard in the face. (Id.). She then witnessed Appellant place Sgt. Minard in a bear hug, pinning his arms. (Id.). During the struggle, Appellant pushed Sgt. Minard toward the window of the office. CO. Williams stated that Sgt. Minard's face bounced off the window, and he and Appellant fell to the ground. (Id.). She indicated that Sgt. Minard landed face down; so his face bounced off the floor several times. (Id.).
 {¶ 12} CO. Williams testified that during the struggle, she was trying to get the Appellant off of Sgt. Minard. (T. 161-162). She stated that she tried to pry his right hand up, but Appellant was stronger than she was. (T. at 162). CO. Williams testified that she then put her knee on the Appellant's arm and held his hand until another corrections officer arrived. (T. at 162). When CO. Lemon arrived, he assisted in cuffing Appellant. (T. 162-163). CO. Williams testified that she remembers seeing CO. Gross in the area of the altercation, but she was not concentrating on what CO. Gross was doing. (T. 163).
 {¶ 13} CO. Williams further testified that after Appellant was secured, she noticed blood on the floor, as well as on Appellant and Sgt. Minard. (T. at 164). At first, she was unsure as to the source of the blood. (T. at 164). However, after Appellant was taken away, CO. Williams noticed that Sgt. Minard had a split lip and was bleeding. (T. at 164). She testified that when she told him to wipe the blood off of his face, he was dazed and did not respond. (T. at 164). CO. Williams testified that she suffered swelling to her right wrist and had a bruise on her left wrist; however, she insisted that Sgt. *Page 5 
Minard go to the clinic to get checked out first because he looked like he had suffered worse injuries than any of the other officers. (T. at 165).
 {¶ 14} Appellant suffered no injuries as a result of the altercation. At trial, Appellant testified that his mouth was bleeding, and that he suffered scratches to his back, and an injury to his arm as a result of the incident. (T. at 225). However, the nurse's notes from his clinic check indicated that Appellant stated he was not injured. (T. at 200). The physical examination revealed only a small scrape to Appellant's right shoulder, which did not require treatment. (T. at 200).
 {¶ 15} Sgt. Minard suffered a split top and bottom lip, and an injury to his front tooth as a result of the incident. (T. at 122). He was examined at the institution clinic before going to the Med Central Hospital emergency department for treatment. (T. at 121-122). He required stitches to close the lacerations to both his top and bottom lip. (T. at 119).
 {¶ 16} Appellant took the stand in his own defense, claiming that Sgt. Minard was the aggressor. According to Appellant, when he was in Sgt. Minard's office, Sgt. Minard told him he was going to send the conduct report to R.I.B. and not hear the issue at his level even though it was over a mere hair cut. (T. at 117). Sgt. Minard then presented Talley with a paper to sign waiving his rights and consenting to the cause heard by R.I.B., which Appellant refused to sign. (T. at 232). Because Appellant was upset about having to cut his hair and being sent to R.I.B., he left Sgt. Minard's office unexcused. (T. at 138, 225, 232).
 {¶ 17} Appellant stated that Sgt. Minard proceeded to follow him out of the office "barking orders" and telling Appellant that he couldn't leave without being excused first, *Page 6 
"going off" and behaving aggressive generally. (T. at 225). According to Appellant, Sgt. Minard caught up with him, grabbed him from the front and slammed him to the ground. (T. at 225-226). Appellant claims that it was Sgt. Minard's own actions which caused the prison "man down" alarm to sound. (T. at 226). Appellant alleges that Sgt. Minard's injuries were sustained when he hit the floor with Appellant, thus, being caused by his own actions and not the conduct of Appellant.
 {¶ 18} At the conclusion of the one day trial, the jury found Appellant guilty as charged in the indictment.
 {¶ 19} The trial court sentenced Appellant to a maximum term of twelve months in prison.
 {¶ 20} Appellant now appeals his conviction and sentence, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 21} "I. THE JUDGMENT OF CONVICTION MUST BE REVERSED BECAUSE IT RESTS UPON INSUFFICIENT EVIDENCE IN VIOLATION OF THE CONSTITUTIONAL GUARANTEES OF DUE PROCESS OF LAW.
 {¶ 22} "II. THE JUDGMENT OF CONVICTION MUST BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 23} "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO DISMISS THE CHARGES AGAINST THE DEFENDANT-APPELLANT DUE TO A VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHT TO A SPEEDY TRIAL *Page 7 
PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 I., II. {¶ 24} In Appellant's first and second assignments of error, he argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 25} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 26} In the case sub judice, Appellant was charged with one count of assault on a corrections officer in violation of R.C. §2903.13(A)(2)(a), which states:
 {¶ 27} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 28} "* * *
 {¶ 29} "(2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree: *Page 8 
 {¶ 30} "(a) The offense occurs in or on the grounds of a state correctional institution or an institution of the department of youth services, the victim of the offense is an employee of the department of rehabilitation and correction, the department of youth services, or a probation department or is on the premises of the particular institution for business purposes or as a visitor, and the offense is committed by a person incarcerated in the state correctional institution, by a person institutionalized in the department of youth services institution pursuant to a commitment to the department of youth services, by a parolee, by an offender under transitional control, under a community control sanction, or on an escorted visit, by a person under post-release control, or by an offender under any other type of supervision by a government agency."
 {¶ 31} The evidence establishes that Sgt. Minard was a corrections officer at the Richland Correctional Institution and Appellant Talley was an inmate therein on the day of the incident. (T. at 111-112). The evidence, if accepted, also established that Sgt. Minard attempted to handcuff appellant, but appellant resisted. (T. at 116). Additional evidence was presented to the jury, in the form of testimony from Sgt. Minard, Corrections Officers Gross and Williams that Appellant then assaulted Sgt. Minard. (T. at 116, 124, 150, 155-156, 161).
 {¶ 32} Based on the foregoing, we find substantial credible evidence to support the jury's findings of guilty of an assault by an inmate on a corrections officer on the grounds of a correctional facility and that the jury did not clearly lose its way.
 {¶ 33} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly *Page 9 
lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 34} While the jury heard inconsistencies in the different versions of the incident, it is clear the jury chose to accept the version of events as testified to by Sgt. Minard.
 {¶ 35} "The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "`While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence'". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 sic[.] Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill
(1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.(sic); State v. Burke, Franklin App. No. 02AP1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096."
 {¶ 36} We conclude the jury, in resolving conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing the evidence in *Page 10 
the light most favorable to the state, we further conclude that a rational trier of fact could have found, beyond a reasonable doubt, appellant was guilty of the crime of assault on a corrections officer. Accordingly, the verdict is not against the manifest weight of the evidence.
 {¶ 37} Appellant's first and second assignments of error are overruled.
 III. {¶ 38} In Appellant's third assignment of error, he argues that he was denied his right to a speedy trial. We disagree.
 {¶ 39} Appellant's trial counsel did not raise the speedy trial issue below.
 {¶ 40} Appellant argues that this issue must therefore be reviewed under a plain error analysis. We disagree.
 {¶ 41} Appellant's failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal. See State v. Thompson (1994),97 Ohio App.3d 183, 186-187, 646 N.E.2d 499. State v. Taylor (2002),98 Ohio St.3d 27.
 {¶ 42} R.C. § 2945.73(B) states, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."
 {¶ 43} Thus, the statute requires the accused to file the motion before trial. Thompson, supra. Appellant did not timely file a motion to dismiss based upon a speedy trial violation. Appellant's failure to do so results in a waiver of the issue on appeal. Id. *Page 11 
 {¶ 44} Based on the foregoing, Appellant's third assignment of error is overruled.
 {¶ 45} Appellant's sentence and conviction entered in the Richland County Court of Common Pleas is affirmed.
By: Wise, J. Hoffman, P. J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
 Costs assessed to appellant. *Page 1