DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, following a jury verdict finding appellant guilty of three counts of rape and three counts of gross sexual imposition. Because we conclude that appellant's constitutional rights to receive effective assistance of counsel were violated, we reverse. *Page 2 
 {¶ 2} In mid-July, 2005, appellant, Timothy Conkright, was indicted on three counts of rape, a violation of R.C. 2907.02(A)(1)(b) and (B), and three counts of gross sexual imposition, a violation of R.C.2907.05(A)(4). The charges resulted from statements made by two young girls reporting that a man with a long pony tail, a beard, and driving a blue truck had committed sexual offenses against them. Prior to trial, pursuant to a motion by appellant, the court conducted a competency hearing regarding the two children. Without objection from defense counsel, the court found both children competent to testify.
 {¶ 3} At trial, testimony was presented that appellant, an installer for a satellite dish company, Dish Network, was working in a Monclova, Ohio neighborhood on the weekend of October 30 and 31, installing a dish system for Michael and Michelle K., a married couple whose residence was next to and across from the homes of the two girls.
 {¶ 4} The two girls, H. and D., testified in court regarding what the perpetrator had done, but neither could identify appellant in court as that person. The girls' mothers testified regarding the girls' behavior changes and subsequent disclosures which did not occur until June 2005, eight months after the alleged incident. Michael and Michelle K. also testified, describing a workman at their home at the time of the incident, who allegedly had worked for both the satellite dish company and the local cable television company.
 {¶ 5} Detective Cathy Stooksbury testified as to her investigation of the allegations, her interviews of the girls, and the creation of and use of the six person photo *Page 3 
array to identify the perpetrator. Detective Scott Smith also testified regarding an interview he conducted with appellant during the investigation of the alleged crime. The state then rested.
 {¶ 6} Appellant then presented five witnesses, Patricia Conkright, Sandy Spradlin, Thomas K. Dawson, Jason Hutchins, and Bonnibelle Fitch. Several of these witnesses testified as to photographic exhibits, as to his appearance and that his hair was short at the time of the alleged incident. Evidence was also presented that appellant worked for the satellite dish company, but was never employed by the cable television company. In addition, testimony was presented that when working and installing satellite dish systems, appellant drove a white company van which held tools and equipment necessary for the jobs. Testimony was also presented that appellant did not own any vehicle, and that some cable television company employees drove blue trucks when servicing residential customers.
 {¶ 7} Ultimately, the jury found appellant guilty on all counts. Appellant was sentenced and was found to be a sexually oriented offender.
 {¶ 8} Appellant now appeals from that judgment arguing the following seven assignments of error:
 {¶ 9} "Assignment of Error I: The trial court verdict was against the manifest weight of the evidence because the only evidence that connected Conkright to the crime was a photo array that was not constitutional or credible. And, there was a plethora of exculpatory evidence that the jury either did not understand or improperly ignored. *Page 4 
 {¶ 10} "Assignment of Error II: The prosecutors engaged in misconduct through thinly veiled attempts to insure the jury knew Conkright had previously been arrested and had been held without bond during this trial. And, during the closing arguments by testifying, misstating the record repeatedly, and vouching.
 {¶ 11} "Assignment of Error III: Conkright's constitutional right to a Speedy Trial was violated.
 {¶ 12} "Assignment of Error IV: The trial court erred in determining that the two child victims were competent to testify.
 {¶ 13} "Assignment of Error V: Conkright's trial counsel provided him with ineffective assistance of counsel thereby depriving him of a fair trial
 {¶ 14} "Assignment of Error VI: The trial court erred by not granting Conkright's Rule 29 [sic] motion for judgment of acquittal because there was insufficient evidence to prove each element of the crimes charged.
 {¶ 15} "Assignment of Error VII: Conkright's sentence was unconstitutional because the judge made findings of fact and it violated the Ex Post Facto Clause."
 I. {¶ 16} We will address appellant's third assignment of error out of order. In his third assignment of error, appellant contends that his constitutional right to a speedy trial was violated.
 {¶ 17} We initially note that, in this case, appellant did not file a motion to dismiss in the trial court based upon speedy trial violations pursuant to R.C. 2945.73. Generally, *Page 5 
a defendant who fails to file such a motion[1] has waived his statutory right to a speedy trial and is estopped from raising this defense on appeal. State v. Talley, 5th Dist. No. 06 CA 93,2007-Ohio-2902; State v. Stoutemire (Oct. 24, 1985), 8th Dist. No. 49685. Nevertheless, courts have addressed the merits of such an argument despite the waiver. See, e.g., State v. Taylor,98 Ohio St.3d 71, 2002-Ohio-7017; State v. Starks, 6th Dist. L-05-1417 and L-05-1419,2007-Ohio-4897.
 {¶ 18} Some cases, however, have also addressed the failure to file such a motion under a plain error standard. See State v. Hinson, 8th Dist. No. 87132, 2006-Ohio-3831; State v. Simms, 10th Dist. Nos. 05AP-806, 05AP-807, 2006-Ohio-2960 (appellant waived all but plain error on his statutory speedy trial claims); State v. Burgess, 11th Dist. No. 2003-L-069, 2004-Ohio-4395 (trial counsel's failure to object waived review of the speedy trial claim absent plain error); State v.Griffin (Dec. 20, 1995), 9th Dist. No. 2440-M. Plain error involves both alleged omissions of trial counsel and alleged error on the part of the trial court or in the trial proceedings. State v. Nelson (Mar. 9, 2001), 2d Dist. No. 00CA12, citing State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 19} Frequently, the issue is framed on appeal as "ineffective assistance of trial counsel." See, e.g., Nelson, supra (noting that the defendant had alleged that the plain error doctrine should be applied because trial counsel failed to file a motion to suppress *Page 6 
evidence). See, also, Talley, supra. Recent cases have also applied a hybrid approach, stating that an "ineffective assistance of counsel claim predicated upon a failure to file a motion to dismiss for want of speedy trial is reversible only for plain error." See State v.Gums, 8th Dist. No. 86760, 2006-Ohio-3159, citing to State v.Boone, 8th Dist. No. 81155, 2003-Ohio-996, ¶ 6.
 {¶ 20} Where a defendant does not receive effective assistance of counsel, generally, the remedy is reversal and remand for a new trial. If a defendant's speedy trial rights are in fact violated, however, the appropriate remedy would be to reverse and vacate the conviction. Therefore, in our view, reviewing the failure to file a motion to dismiss pursuant to R.C. 2945.73 under a plain error standard allows us the discretion to address such a claim and provide the proper remedy when appropriate.
 {¶ 21} When a defendant does not object at trial, Crim.R. 52(B) empowers the court to notice "[p]lain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court." This rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection.State v. Barnes, 94 Ohio St.3d 21, 27. First, there must be an error.State v. Hill (2001), 92 Ohio St.3d 191, 200. Second, the error must be plain. Barnes, supra, at 27. "To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings." Id. Third, the error must have affected the defendant's "substantial rights." Id. In other words, the trial court's error must have affected the outcome of the proceeding. Id.; Hill, supra at 205. The burden is on the defendant to demonstrate a *Page 7 
violation of his substantial rights. State v. Perry, 101 Ohio St.3d 118,2004-Ohio-297, ¶ 14.
 {¶ 22} Crim.R. 52(B) is discretionary, and the plain error doctrine should only be utilized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."Barnes, supra at 27, quoting State v. Long (1978), 53 Ohio St.2d 91. With this standard in mind, we will now examine appellant's third assignment of error.
 {¶ 23} The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state.State v. O'Brien (1987), 34 Ohio St.3d 7, 8. The statutory speedy trial provisions of R.C. 2945.71 et seq. constitute the Ohio legislature's rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and must be strictly enforced by the courts. State v.Pachay (1980), 64 Ohio St.2d 218, syllabus; State v. MacDonald (1976),48 Ohio St.2d 66, 71. See also, State v. Singer (1977),50 Ohio St.2d 103, 106 (limitations on the speedy-trial right contained in R.C.2945.72 are to be strictly construed and not liberalized in favor of the state).
 {¶ 24} The Supreme Court of Ohio has imposed upon the prosecution and the trial courts the mandatory duty of complying with R.C. 2945.71
through 2945.73. See Singer, supra at 105-106, citing to e.g., State v.Pudlock (1975), 44 Ohio St.2d 104; State v. Cross (1971),26 Ohio St.2d 270; State v. Gray (1964), 1 Ohio St.2d 21. "Under R.C. 2945.71 *Page 8 
through 2945.73, an accused's statutory right to a speedy trial is not affected by his failure to demand a trial. State v. Cross, supra. A defendant's not objecting to a trial date outside the 90-day limit before the expiration of the period is not substantively different from failing to demand a trial, and such failure or election not to object does not result in his acquiescence in the trial date." Singer, supra, at 106.
 {¶ 25} R.C. 2945.71(C)(2) requires that anyone charged with a felony be brought to trial within 270 days of arrest. If the accused is held in jail pending trial, each day counts as three days, thereby reducing the speedy-trial time to 90 days. R.C. 2945.71(E). The day of arrest is not counted when computing the time within which a defendant must be brought to trial. State v. Lautenslager (1996), 112 Ohio App.3d 108, 110; R.C.2945.71; Crim.R. 45(A). The time within which an accused must be brought to trial may be extended for any of several statutory reasons, including for a period of a reasonable continuance on other than the accused's own motion. R.C. 2945.72(H). R.C. 2945.02, further provides that:
 {¶ 26} "No continuance of the trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance.
 {¶ 27} "No continuance shall be granted for any other time than it is affirmatively proved that ends of justice require.
 {¶ 28} "Whenever any continuance is granted, the court shall enter onthe journal the reason for the same." (Emphasis added.) *Page 9 
 {¶ 29} Thus, R.C. 2945.02 permits the trial court to extend speedy trial time as long as the length of time is reasonable and the reason for the continuance is indicated in the judgment entry. Nevertheless, despite the mandatory language that the court "shall enter on the journal the reason" for the continuance, the Supreme Court of Ohio has suggested that this section only applies to sua sponte continuances by the trial court. See State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 62. Thus, although the court must put the reasons for continuance into a journal entry when it grants a sua sponte continuance, when a state's request for a continuance is granted, the reasons need merely be in the record. Id., distinguishing State v. Mincy (1982), 2 Ohio St.3d 6. Further, "where the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof, such a continuance will be upheld." Myers, supra, ¶ 62.
 {¶ 30} Although we disagree that R.C. 2945.02 does not also apply to continuances granted at the state's request, we are bound by what appears to be the Supreme Court of Ohio's decision to exempt such entries. Therefore, according to Myers, the trial court need not specifically state which party the time counts against nor even specify the reason in its journal entry for the continuance requested by the state, as long as the record contains support for the continuance.Myers, supra. With this standard in mind, we will now examine the record to determine whether appellant's speedy trial rights were violated.
 {¶ 31} In this case, the number of days, beginning with the day after appellant's arrest on July 5, 2005 until his trial began on January 4, 2006, was 182 days. Since *Page 10 
appellant was in jail while awaiting trial, he had to be brought to trial within the required 90 triple-counted days. Therefore, since the time was more than double the statutorily required time, appellant has established a prima facie case for a violation of his speedy trial rights. Nonetheless, if the record shows that any of the delays were attributable to appellant or were reasonable, such time periods will be tolled. The record shows that appellant executed written waivers for 41 days, from August 16, 2005 to September 26, 2005 and for 42 days, from October 19, 2005 to November 30, 2005.[2] Subtracting the 83 days which appellant waived, we must now determine whether any of the remaining 99 days were tolled. *Page 11 
 {¶ 32} The trial court, in its September 23, 2005[3] and November 3, 2005 judgment entries, granted the state's motions for continuances, but indicated only that it was, "Pursuant to R.C. 2945.02 ends of justice required continuance." No other reason was provided in the judgment entries. In its December 7, 2005 judgment entry, the court again granted a continuance and vacated the December 7, 2005 trial date "at the request of the State of Ohio," but failed to reference the statute or again to indicate any reason at all for the continuance. Trial was rescheduled for January 4, 2006 in a judgment entry dated December 15, 2005, which was also devoid of any reason for granting the continuance.
 {¶ 33} In our view, merely referencing the statute and stating that the continuance is granted for "the ends of justice" does not meet the statutory requirements. The better approach would be to indicate on the journal a specific reason for the continuance. *Page 12 
Nevertheless, under Myers, if the record supports a conclusion that the state's requests were "reasonable," the continuances will toll appellant's speedy trial time.
 {¶ 34} The first state requested continuance, from September 26 through October 18, 2005, was due to the unavailability of the doctor who had examined the children for physical signs of sexual abuse. The unavailability of a key prosecution witness is a reasonable ground for granting a continuance pursuant to R.C. 2945.72(H). State v.Saffell (1988), 35 Ohio St.3d 90, 91; State v. Vaughn (July 26, 1989), 9th Dist. No. 13813. Although the state did not specifically say that the doctor was a "key" witness, we conclude that the continuance was reasonable under the circumstances. Therefore, appellant's speedy trial time was tolled for 23 three days. Subtracting those days from the 99 unwaived days brings us to 76 days, well within the statutory speedy trial time limits. Thus, we need not address the reasons for the additional two continuances granted on behalf of the state.
 {¶ 35} To determine whether a delay is so excessive as to offend the federal constitutional right to a speedy trial, courts balance the following factors: (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted the right, and (4) whether prejudice to the defendant resulted. Barker v. Wingo (1972),407 U.S. 514, 530-533; State v. Taylor, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 38. Considering that appellant was brought to trial within the statutory speedy trial time, we cannot say that the length of any of the delays was unreasonable or resulted in prejudice *Page 13 
to appellant. Therefore, we conclude that appellant's federal constitutional right to a speedy trial was also not violated.
 {¶ 36} Accordingly, appellant's third assignment of error is not well-taken.
 II. {¶ 37} In his fourth assignment of error, appellant argues that the trial court erred in finding the two child victims competent to testify.
 {¶ 38} Again, appellant failed to object to the children's competency so we may review this alleged error only under a plain error standard. As we noted previously, plain error may be shown only when substantial rights of the accused are so adversely affected as to undermine the fairness of the trial process. State v. Swanson (1984),16 Ohio App.3d 375, 377. Notice of plain error is to be taken with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Pumpelly (1991), 77 Ohio App.3d 470,476.
 {¶ 39} The determination of whether a child is competent to testify generally rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. State v. Clark
(1994), 71 Ohio St.3d 466, 469; State v. Frazier (1991),61 Ohio St.3d 247, syllabus. An "abuse of discretion" is more than an error of law or of judgment, the term connotes that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 40} Evid.R. 601 provides, in pertinent part, that: *Page 14 
 {¶ 41} "Every person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
Thus, under the rule, children under the age of ten are presumptively incompetent to testify. See State v. Wallace (1988), 37 Ohio St.3d 87,94 and State v. Wilson (1952), 156 Ohio St. 525, 529-530. This presumption is, however, rebuttable. Wallace, supra.
 {¶ 42} The test for determining whether a child under ten is competent to testify requires the trial court to take into consideration the child's ability to (1) receive accurate impressions of fact, (2) recollect those impressions or observations, (3) communicate what was observed, (4) understand truth and falsity, and (5) appreciate the responsibility to tell the truth. Frazier, supra. These factors are designed to protect the accused by establishing that a child is trustworthy. State v. Parks, 7th Dist. No. No. 04 CO 19, 2007-Ohio-3145, ¶ 48.
 {¶ 43} Proper judicial procedure requires the trial court to conduct a voir dire examination of a child under ten to determine the child's competency. Wilson, supra, at 529. The trial judge then has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Frazier, supra, at 251. After a trial court concludes that the threshold requirements have been satisfied, a witness under the age of ten is deemed competent to testify. Id. *Page 15 
 {¶ 44} In the instant case, the trial court conducted a competency hearing at which the trial judge questioned the two children. Although the court asked a few background questions, the primary focus centered on whether the children appreciated the difference between right and wrong, and the truth and a lie. H. appeared to respond within the parameters of what we would consider competent. We conclude, therefore, that the trial court did not abuse its discretion in determining that H. was competent to testify.
 {¶ 45} We agree, however, with appellant that, although D. may have had a cursory understanding of the truth versus a lie, she did not appear to be able to provide consistent, accurate impressions of what had happened in the past. This was borne out by her inconsistent, contradictory, and brief testimony at trial. Therefore, we conclude that the trial court abused its discretion in finding that D. was competent to testify. Nevertheless, we cannot say that "but for" this error, the trial would have been different, since her testimony at trial was not particularly helpful to the state. Therefore, we do not find that the admission of her testimony rose to the level of "plain error."
 {¶ 46} Appellant's fourth assignment of error is not well-taken.
 III. {¶ 47} In appellant's fifth assignment of error, he argues that his constitutional right to effective assistance of counsel was violated. Appellant asserts that the failure to file a motion to suppress and to object to certain evidence constituted ineffective assistance of counsel. We agree. *Page 16 
 {¶ 48} A criminal defendant is entitled to effective assistance of appellate counsel. See Evitts v. Lucey (1985), 469 U.S. 387. In order to succeed on a claim of ineffective assistance of counsel, appellant must first show that counsel's actions fell below an objective standard of reasonable professional representation. Strickland v. Washington (1984),466 U.S. 668, 687. Such a showing must overcome the strong presumption of counsel's competency. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,301.
 {¶ 49} Second, the defendant must also demonstrate that the defendant was prejudiced by counsel's performance. State v. Martin (1987),37 Ohio App.3d 213, 214. The defendant must show that "`there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"State v. Bradley (1989), 42 Ohio St.3d 136, 142, quoting Strickland v.Washington, supra, 466 U.S. at 694.
 {¶ 50} Appellant's primary argument for ineffective assistance of counsel is the failure to file a motion to suppress the photo array presented at trial. The failure to file or pursue a motion to suppress does not automatically constitute ineffective assistance of counsel.State v. Madrigal, 87 Ohio St.3d 378, 389. Failure to file a motion to suppress may constitute ineffective assistance of counsel, however, where the record demonstrates that the motion would have been granted.State v. Lee, 10th Dist. No. 06AP-226, 2007-Ohio-1594, citing State v.Robinson (1996), 108 Ohio App.3d 428; State v. Pimental, 8th Dist. No. 84034, 2005-Ohio-384, ¶ 15; State v. Garrett (1991), 76 Ohio App.3d 57. See, *Page 17 
also, State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 208 (trial counsel's failure to file a timely motion constituted ineffective assistance since appellant was denied right to assert violations of her constitutional rights). Nevertheless, even when some evidence in the record supports a motion to suppress, defense counsel may be presumed to be effective if it can be shown that the filing of a motion to suppress would have been a futile act. State v. Edwards (July 11, 1996), 8th Dist. No. 69077, citing State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 51} When a witness is shown a photograph of a suspect before trial, due process requires a court to suppress a photo identification of the suspect if the photo array was unnecessarily suggestive of the suspect's guilt and the identification was not reliable. State v. Waddy (1992),63 Ohio St.3d 424, 438, superseded by constitutional amendment on other grounds. The defendant has the burden to show that the identification procedure was unduly suggestive. State v. Harris, 2d Dist. No. 19796,2004-Ohio-3570, ¶ 19. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. Id., citing State v. Wills (1997), 120 Ohio App.3d 320, 324.
 {¶ 52} If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Wills, supra, at 325. If the court finds the procedure is suggestive, then it must assess the reliability of the identification, considering: (1) the witness's opportunity to view the *Page 18 
defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Davis (1996), 76 Ohio St.3d 107, 113. A photo array, "created by police prior to the victim giving a description of the suspect, * * * is not unreasonably suggestive, as long as thearray contains individuals with features similar to the suspect" (Emphasis added.) State v. Jones, 8th Dist. No. 85025, 2005-Ohio-2620, ¶ 15.
 {¶ 53} In this case, six photos were used in the photo array. Only two of them, however, depicted men with facial hair and head hair long enough to be put into a ponytail. Furthermore, these two photos were noticeably larger than the other four photos, with appellant's photo appearing to be the largest of the six. Thus, four of the photos which do not show longer hair and are significantly different from appellant's photo, would have been immediately eliminated by a child looking for someone with a ponytail. Therefore, instead of having six photos to choose from, this effectively narrowed the choices that fit the significant features described by the girls to only two. Moreover, appellant's photo was placed in the center of the first row and is the only photo depicting a scary facial expression, eyes squinting and a grimacing mouth, open with teeth showing. The remaining five photos, including the one with longer hair, are expressionless. *Page 19 
 {¶ 54} We also note that in making her identification, H. narrowed the choices, eliminating the photos one by one, until only appellant's photo remained. At trial, D.'s mother stated that when looking at the array, she, an adult, had an expectation that the perpetrator would be among the photos. Thus, the evidence suggests that the children would not have thought that the person they had encountered might not be in the photo array. Even the detective testified that she "probably" gave the children the impression that the person who had committed the alleged sexual acts was in the array. Therefore, we conclude that the photo array and procedures utilized to identify appellant by the children were unduly suggestive.
 {¶ 55} We must now determine whether, despite the suggestiveness, the identifications were still reliable. We are troubled by many aspects surrounding the pretrial identification of appellant. We agree with the state that, at the time of the incident, the children had an opportunity to view the perpetrator. Both children expressed disgust at what had happened and described the events in terms of what each had done. D. even stated that she looked away. We find it highly unlikely that the two children stared at the man's face the whole time the acts were taking place. In fact, we think it more likely that the children either closed their eyes or, as D. stated, looked away or down. Therefore, the attention given to looking at the perpetrator was likely to be minimal. In any case, a motion to suppress would have permitted this to be explored in detail. *Page 20 
 {¶ 56} The length of time between the incident and the children's disclosure was eight months — a long time in the life of a four and a five year old. Therefore, a child recognizing a person from head-only photos after a one-time encounter is suspect. Nevertheless, the children did not waiver from two of the significant details of their initial description, that the man had a long ponytail and that he drove away in a blue truck. This represents another problem with the identification process.
 {¶ 57} Either we must question the competency of the children in being able to relate just impressions of the incident, or we must agree that their initial description was accurate. Once police obtained appellant's name from the satellite dish work order, however, these key and pertinent details provided by the children were simply dismissed. In addition, the children's mothers and the satellite dish couple all testified that many workman had been in the neighborhood around that time because of new construction. That appellant happened to be the only identifiable workman in the area and that no others were investigated represents the great possibility that the photo of the actual perpetrator never made it into the array.
 {¶ 58} At trial, neither child could identify appellant as the perpetrator. Although H. testified in a confidant manner, D.'s testimony was highly inconsistent. H. remained steadfast that the man had a long ponytail and drove off in a blue truck, not a white van. At trial, D., however, first said the man did not have long hair, but then reverted to the original description of a ponytail, and also agreed that the man drove a blue truck. D. also was very confused as to what day this actually occurred, when the state's theory was *Page 21 
that it had occurred on the Saturday before Halloween. Therefore, going on the basis of the initial description provided by the children, there is nothing in the record to indicate that the police attempted to find a workman who had been in the area that drove a blue truck.
 {¶ 59} In challenging the identification, a motion to suppress would have also provided the defense the opportunity to present evidence regarding the booking photo from 2000 used by police in the array. Although somewhat awkwardly introduced, substantial evidence was presented at trial that, at the time of the incident in 2004, appellant did not have long hair. In addition, evidence was presented that the couple having the satellite dish installed had confused appellant with a cable television installer. Since appellant had never worked for the cable company, this again indicates that another man who may have looked like appellant was actually the perpetrator. Finally, despite the state's effort to confuse the jury by tangentially connecting appellant to a "maroon" truck, no evidence was offered to refute that, at the time of the incident, appellant had arrived and left in a white work van, not the blue truck described by the children.
 {¶ 60} We conclude, therefore, that the record in this case indicates there was enough evidence to justify the filing of a motion to suppress the photo array and identification made by the children from it. We are also satisfied that the evidence presented in the record and at trial indicates that the circumstances surrounding the photo array and subsequent identification were so suspect and unreliable that a motion to suppress would have been granted. Therefore, we further conclude that counsel's failure *Page 22 
to timely move to suppress fell below an objective standard of reasonable representation, and that the children's pretrial identification is the only link to appellant to establish the identity of the alleged perpetrator. Consequently, appellant was prejudiced by counsel's actions and counsel's ineffectiveness undermines this court's confidence in the outcome of the proceeding.
 {¶ 61} We also agree that, as argued by appellant, it would have been prudent for trial counsel to object to the children's competency and to all of the state's requests for continuances, but deem these to be cumulative to that of appellant's failure to file a motion to suppress the photo array.
 {¶ 62} Accordingly, appellant's fifth assignment of error is well-taken. The remaining assignments of error are deemed moot.
 {¶ 63} The judgment of the Lucas County Court of Common Pleas is reversed and this case is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 23 
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] R.C. 2945.73(B) provides, in pertinent part, that: "(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."
[2] Our calculations for appellant's two specific waiver periods are the same as those of the trial court, which calculated speedy trial time days at the November 3, 2005 hearing. The trial court stated that the two waivers counted against appellant, but then, however, referred to another "28 days" due to appellant's motion for competency hearing filed on August 25, 2005. Since the competency hearing was held on September 22, 2005, any delay caused by appellant's motion was included in the waiver period from August 16, 2005 to September 26, 2005, and would not have counted as any additional waived days against appellant.
[3] The trial court stated in the September 23, 2005 judgment entry that it granted the state's request for continuance of the trial date "without objection by Defendant." The Ohio Supreme Court stated inState v. Wentworth (1978), 54 Ohio St.2d 171, 173, that R.C. 2945.71
through 2945.73:
"* * * implement the constitutional right of speedy trial and set forth mandates to which strict adherence is required, that the burden to timely try a defendant rests upon the prosecution and trial courts and that a defendant is not required to either demand a timely trial or object to a trial setting outside the periods set forth in R.C. 2945.71
and is to be accorded the benefits of time limitations prescribed therein." (Citations omitted.) See, also, State v. Lee (1976),48 Ohio St.2d 208, 210.
Therefore, unlike a specific waiver or delay caused by appellant himself, we conclude that appellant's failure to object to the state's continuance request does not affect his right to a speedy trial. *Page 1