{¶ 147} I concur with Judge Osowik's analysis of Doren's second assignment of error. However, I would additionally find that Doren's trial counsel rendered ineffective assistance for failing to move to suppress Margaret Robbins' photo array identification. This, I believe, constitutes a separate, independent basis for reversal.
 {¶ 148} In his sixth assignment of error, Doren points to three instances where, he alleges, his trial counsel provided ineffective assistance: a failure to move to suppress Robbins' pre-trial photo array identification; failure to object to the prosecution's questioning of the inmates regarding the risk of cooperation; failure to object to the methods Schroeder used to help Mickens identify the two-track alley by Lester Avenue. Of these three alleged instances, I agree that trial counsel's failure to file a motion to suppress Robbins' photo array identification constituted ineffective assistance.
 {¶ 149} To establish ineffective assistance of counsel, an accused must show: (1) that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by theSixth Amendment of the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687. Both prongs must be satisfied. Id.
 {¶ 150} With respect to the first prong, courts indulge a strong presumption that counsel was competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. In order to prove prejudicial error, an accused must show that his trial counsel's performance fell below an "objective standard of reasonableness." State v. Bradley (1989), *Page 49 42 Ohio St.3d 136, 142, quoting Strickland, 466 U.S. at 687-688. Claimed errors must be more than disagreements over trial strategy. State v. Brown,115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 53.
 {¶ 151} An accused must also demonstrate that his trial counsel's performance caused prejudice. State v. Martin (1987),37 Ohio App.3d 213, 214. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland v. Washington, 466 U.S. at 694. A reviewing court must consider the totality of the evidence before the judge or jury when determining whether the outcome would probably have been different absent the errors. Id. at 142, quotingStrickland, 466 U.S. at 695-696.
 {¶ 152} With respect to filing motions to suppress, the failure to do so "does not automatically constitute ineffective assistance of counsel.State v. Madrigal, 87 Ohio St.3d 378, 389. Failure to file a motion to suppress may constitute ineffective assistance of counsel where the record demonstrates that the motion would have been granted. State v.Lee, 10th Dist. No. 06AP-226, 2007-Ohio-1594, citing State v.Robinson (1996), 108 Ohio App.3d 428; State v. Pimental, 8th Dist. No. 84034, 2005-Ohio-384, ¶ 15; State v. Garrett (1991), 76 Ohio App.3d 57. See, also, State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 208
(trial counsel's failure to file a timely motion constituted ineffective assistance since appellant was denied right to assert violations of her *Page 50 
constitutional rights)." State v. Conkright, 6th Dist. No. L-06-1107,2007-Ohio-5315, ¶ 50. Where, however, the failure to file a motion to suppress represents a reasonable trial strategy or a "tactical judgment," an ineffective assistance of counsel claim will fail.State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 31-33.
 {¶ 153} A two part test applies to determine whether a photo array should be suppressed: (1) the method of identification is unduly suggestive, and (2) the identification is unreliable. State v.Waddy (1992), 63 Ohio St.3d 424, 438; State v. Murphy (2001),91 Ohio St.3d 516, 534. Regarding suggestiveness, a defendant in a photo array does not need to be surrounded by people "nearly identical in appearance." Murphy, 91 Ohio St.3d at 534, quoting State v. Davis
(1996), 76 Ohio St.3d 107, 112.
 {¶ 154} I would find that the photo array presented to Margaret Robbins was suggestive. Doren is a white man and the stipulated photo representing his appearance in 1991 shows short hair and facial hair. Each of the six photographs depict white men with facial hair. However, Doren's photograph is the only one with visibly grey hair and the facial hair is mostly white. Two other photos had men with long hair; both are definitely younger than Doren. One photo shows a man with dark-rimmed glasses. The United States Supreme Court has noted as a "striking example" of suggestiveness a lineup where the defendant was the only person under age 40. U.S. v. Wade (1967), 388 U.S. 218, 232. Here, Doren is by far the oldest person in the array and the only person with gray hair.
 {¶ 155} The manner in which the photo array was presented is even more concerning. Proof of the presentation lends itself to establishing reliability. Schroeder *Page 51 
had a Texas police officer show Robbins the array. The Texas police officer did not testify at trial. Thus, Doren was unable to confront the presenter of the array. No information was elicited regarding the officer's conformance to presentation procedures.
 {¶ 156} The state duly notes that an "unnecessarily suggestive identification process does not violate due process if the identification possesses sufficient indicia of reliability." State v.Keith (1997), 79 Ohio St.3d 514, 523, citing Manson v. Brathwaite
(1977), 432 U.S. 98. This identification, however, completely lacks reliability. Whether the identification is reliable is the "linchpin" in the analysis. Manson v. Brathwaite, 432 U.S. at 114. "The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive." State v. Parker (1990), 53 Ohio St.3d 82, 87.
 {¶ 157} The following factors should be applied to determine whether the identification is reliable: (1) the witnesses' opportunity to view the defendant during the crime; (2) the witnesses' degree of attention; (3) the accuracy of the witnesses' prior description of the suspect; (4) the witnesses' certainty; (5) the time elapsed between the crime and the identification. Neil v. Biggers (1972), 409 U.S. 188, 199. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Manson, 432 U.S. at 114.
 {¶ 158} The Neil factors strongly support a conclusion that the photo identification was unreliable. Robbins had two brief opportunities to view the man who, she said, "casually" walked up and then back down the street on the day Meeks was *Page 52 
killed. When she saw the man, she did not connect him to any crime. She testified that her degree of attention was high because she was home alone and she thought the man looked like either a homeless person or a construction worker and "didn't belong" on her street.
 {¶ 159} Robbins' asserted high degree of attention stands in contrast, however, to instances where a witness's attention is fixed because the witness knew a crime was committed or thought a crime may have been committed. Compare, State v. Wogenstahl (1996), 75 Ohio St.3d 344, 364
(shown photos right after murder, several opportunities to view defendant up close, and witness had "good reason" to focus on defendant and remember him); State v. Davis (1996), 76 Ohio St.3d 107 (witness shown lineup day after murder occurred, witness knew defendant and saw him 20 times previously).
 {¶ 160} Witness identification of strangers has been deemed extremely unreliable. "The primary concern expressed in cases discussing the problems with eyewitness identification relates to a witness observing and subsequently identifying a stranger [sic]. Manson v.Brathwaite, 432 U.S. 98, 111-12, (1977) (discussing previous Supreme Court cases focusing on the risks of eyewitness identification, noting that `[u]sually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress');United States v. Wade, 388 U.S. 218, 228, (1967) (`[t]he identification of strangers is proverbially untrustworthy.' `The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.'); Jackson v. Fogg, 589 F.2d 108,112 (2d *Page 53 
Cir. 1978) (`Centuries of experience in the administration of criminal justice have shown that convictions based solely on testimony that identifies a defendant previously unknown to the witness [are] highly suspect.')." Moss v. Hofbauer (C.A. 6, 2002), 286 F.3d 851, 862. These cases "reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." Manson v.Brathwaite, supra at 112.
 {¶ 161} Neil's last two factors definitely indicate unreliability. Over 12 years had elapsed since Robbins saw the man on Lester Avenue, and she was unable to make a positive identification at the time she viewed the array. It strains credulity to believe that a person can see a man for a few moments from across the street and identify the person 12 years later with "99.9 percent" certainty.
 {¶ 162} "It is the likelihood of misidentification which violates a defendant's right to due process." State v. Parker (1990),53 Ohio St.3d 82, 87. There is a high likelihood that Margaret Robbins misidentified Doren as the man she briefly saw walk down her street 12 years ago. "It is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." U.S. v. Wade, 318 U.S. at 229. Hence, there is a discrepancy between Robbins' inability to make a positive identification when viewing the array, and her insistence at trial that she was "99.9 percent" sure. *Page 54 
 {¶ 163} Given the unreliability of Robbins' identification, Doren's trial counsel's decision not to move to suppress the photo array cannot be excused as a tactical decision or as sound trial strategy. I cannot accept the state's argument that, because Robbins testified at trial to her certainty that Doren was the man she saw 12 years ago, the identification procedure was not suggestive or unreliable.
 {¶ 164} Had Doren's trial counsel filed a motion to suppress, it would likely have been granted. The resulting prejudice inflicted upon Doren is clear. Robbins was the only eyewitness who expressed certainty that Doren was near the crime scene on the day Meeks was murdered. Absent Robbins' identification, the only other evidence placing Doren near Lester Avenue on June 7, 1991, was Mickens' testimony. And Mickens could not recall what time, day, month, or year he went with Doren to an alley — an alley which Mickens did not even know was located in Northwood.
 {¶ 165} I agree that the state's violation of the order in limine was prejudicial. However, because I would additionally find Doren's second assignment of error well-taken, I respectfully concur.