OPINION
{¶ 1} Defendant-appellant Tony Harris, Jr., appeals from his conviction and sentence for the offenses of Aggravated Robbery, Aggravated Burglary, Kidnapping and Rape. Harris contends that he was denied the effective assistance of counsel at trial. He further contends that the trial court failed to conduct an appropriate inquiry with regard to his stated reservations regarding his attorney's conduct. Finally, Harris contends that the effect of these cumulative errors deprived him of a fair trial.
 {¶ 2} We conclude that Harris has failed to establish that counsel's representation fell below an objective standard of reasonableness. We further conclude that the trial court did not err by failing to make an inquiry into Harris's stated claim of dissatisfaction with counsel. Finally, we find no support for Harris's claim that cumulative error deprived him of a fair trial.
 {¶ 3} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} This case revolves around a home invasion that occurred on September 12, 2000. At approximately ten o'clock p.m. on that date, Hollis Shifflet and his girlfriend, Verona Slivinski, were at home watching television when they heard a knock on their door. When Shifflet opened the door, a black male jerked the door open, rushed into the house and pointed an automatic pistol at Shifflet's forehead. Another black man and a white man then entered the house. The men were subsequently identified as Harris, Lavon Hooper and Stephen Ashley.[1]
 {¶ 5} Shifflet's eyeglasses were removed and tossed away. He was asked where the safe was located. When he refused to answer, Harris put the gun to Slivinski's head and repeated the question, whereupon Shifflet informed them of the location of the safe. Harris and Hooper dragged Shifflet to the dining room, and then to the back bedroom. Shifflet was forced to open a safe. After the safe was searched, Shifflet was taken to the front bedroom, where the men searched for jewelry.
 {¶ 6} While Shifflet and the two men were in the bedroom, Slivinski was being guarded in the front room by Ashley. At some point, Ashley left and went into the bedroom with the others. Slivinski was able to dial 911 on the telephone. However, she hung up without speaking. Her eyeglasses were eventually removed, and she was bound with duct tape. Even though her eyes were covered with the tape, she was able to see out of the bottom of the tape.
 {¶ 7} All three men and Shifflet returned to the living room. Shifflet's limbs and eyes were bound with duct tape. Harris twice stuck his gun in Slivinski's vagina. (Slivinski was wearing a nightgown.) At that point, Dayton Police officers knocked on the door. The three offenders grabbed a bag of jewelry and money and ran out of the house. Shifflet managed to get the front door open.
 {¶ 8} Shifflet and Slivinski gave descriptions of the three men. However, the police were unable to locate them. Therefore, Detective Mark Bilinski had Shifflet and Slivinski review over seven hundred photographs on computer in an attempt to identify the defendant.
 {¶ 9} At some point, Ashley was identified as one of the three men. He agreed to speak with the police, and identified Harris as an accomplice. Bilinski then created a photographic array of six black men, including a picture of Harris. The arrays were shown to Shifflet and to Slivinski separately. Slivinski identified Harris, but stated that she was not "positive" of her identification. Shifflet also identified Harris and stated that while he was not "one hundred percent positive" of the identification he was "almost positive" and "pretty sure."
 {¶ 10} Harris was charged by indictment with one count of Aggravated Robbery, one count of Aggravated Burglary, two counts of Kidnapping and two counts of Rape. He was tried before a jury. During trial, both Shifflet and Slivinski made positive identifications of Harris. The jury found Harris guilty as charged.
 {¶ 11} At the sentencing hearing, Harris made the following statement:
 {¶ 12} "Another thing, I don't have no problem with Mr. Matlock or, you know, his company or whatever. But I don't feel like he handled my case right. That's how I feel, your Honor. I don't feel like that he properly handled my case the right way. You know, I don't know if it's because I didn't give him no money or what, you know. But I just don't feel like none of this is right. * * * You know, I ask you to take that into consideration."
 {¶ 13} The trial court sentenced Harris appropriately. From his conviction and sentence, Harris appeals.
 II {¶ 14} Harris's First Assignment of Error states as follows:
 {¶ 15} "Appellant was denied his constitutionally guaranteed right to effective assistance of counsel."
 {¶ 16} Harris contends that he was denied the effective assistance of counsel. Specifically, he argues that counsel was ineffective for failing to: (1) file a motion to suppress the photographic identifications made by the victims; (2) investigate, prepare and zealously defend the case; and (3) request a limiting instruction regarding "other acts."
 {¶ 17} Claims of ineffective assistance of counsel are assessed under the two-part test of Strickland v. Washington (1984), 466 U.S. 668. "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." Id. at 687-688. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v.Bradley (1989), 42 Ohio St.3d 136, 142, quoting Strickland.
 {¶ 18} Harris first argues that trial counsel was ineffective for failing to seek the suppression of the identifications made by the victims following the photographic line-up.
 {¶ 19} When a witness has been confronted with a suspect before trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. State v. Murphy,91 Ohio St.3d 516, 534, 2001-Ohio-112, citation omitted. The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. State v. Wills (1997),120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unfairly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325.
 {¶ 20} Harris makes no argument that the photographic lineup used in this case was unduly suggestive. Instead, his argument centers on the claim that the identifications were unreliable. He notes that the victims were under stress during the time the offenses were committed. He also points out the fact that the offenders removed the victims' eyeglasses during the commission of the crimes — a fact that Harris contends belies the claim that the victims could see the offenders. He also notes that the victims had reviewed over seven hundred pictures of offenders by computer prior to seeing the photographic line-up provided by Detective Bilinski. He argues that given the fact that he had a prior criminal record his picture would "likely have been included within the photographs displayed" to the victims, and that their failure to identify him during the computer search demonstrates that their subsequent identification was flawed.
 {¶ 21} We have reviewed the photospread used to make the identification of Harris and have found nothing to indicate that the set of photographs is unduly suggestive. To the contrary, the six photographs contained in the spread are of young black males with roughly the same build. The clothing and haircuts on the young men is similar. Nothing makes any one of the six stand out from the others. Indeed, the line-up is remarkable for its lack of suggestiveness.
 {¶ 22} Furthermore, we note that Shifflet and Slivinski were able to positively identify Harris at trial. Even though they both had their eyeglasses removed, they stated that they had good views of Harris. In fact, Shifflet was able to open his safe without his glasses. Harris and the others were in the house for approximately forty-five minutes, during which Shifflet and Slivinski had ample opportunity to observe them up close. Although Shifflet and Slivinski were under stress during the attack, they both indicated that upon seeing Harris in person they had no doubts that he was involved in the offense. Finally, we find that the claim that the identifications are unreliable because Shifflet and Slivinski failed to identify Harris's picture during the review of the pictures on computer is without merit. There is nothing in the record to support Harris's claim that his photograph was "likely" included in the computer search conducted by the victims.
 {¶ 23} Given that Harris has not argued that the photographic line-up was unduly suggestive, and that our review reveals nothing in the record indicating undue suggestion, we conclude that trial counsel's decision not to file a motion to suppress was warranted. In other words, there was no basis for making a motion to suppress. Therefore, we conclude that trial counsel was not ineffective in this regard.
 {¶ 24} Harris next argues that counsel failed to adequately investigate, prepare for and defend his case. This argument hinges upon the claim that trial counsel was unaware that Harris had a criminal record in Montgomery County. We find this claim without merit. There is nothing in the record to support this argument. Indeed, it appears that counsel was aware of Harris's prior record, given that he questioned both Harris's mother and sister regarding Harris's prior arrests. Thus, we reject the claim that Harris was denied the effective assistance of counsel in this regard.
 {¶ 25} Finally, Harris argues that counsel should have requested a limiting instruction with regard to his "other acts." It is clear from reading the transcript that counsel attempted to introduce evidence of Harris's prior criminal record in an effort to support the argument that Harris's picture must have been included in the seven hundred pictures reviewed by the victims. This argument appears to have been intended to bolster the claim that the victims' subsequent identifications were unreliable because they had failed to identify Harris in their prior review.
 {¶ 26} Harris does not contend that this strategy constituted ineffective assistance of counsel. Instead, he claims that counsel was ineffective for failing to request a limiting instruction regarding these other offenses. However, we cannot say that trial counsel was unreasonable in failing to request a limiting instruction. Again, it appears that counsel attempted to introduce this evidence to support his argument regarding the reliability of the identifications. It appears that counsel attempted to avoid discussing any details of the prior offenses for which Harris was arrested, in an effort to introduce this evidence in the least damaging manner possible. Therefore, it is reasonable to assume that trial counsel did not wish to focus the jurors' attention on these prior bad acts by requesting and receiving a limiting instruction. We conclude that this was strategically sound.
 {¶ 27} Our review of the record does not support Harris's claim that counsel was ineffective. Therefore, the First Assignment of Error is overruled.
 III {¶ 28} The Second Assignment of Error is as follows:
 {¶ 29} "The trial court erred in failing to conduct an inquiry on the record into appellant's allegations of ineffective assistance of counsel."
 {¶ 30} Harris contends that the trial court was required to conduct an inquiry into his complaints regarding counsel's ineffective assistance at trial. In support, he cites State v. Deal (1969), 17 Ohio St.2d 17, in which the Ohio Supreme Court held:
 {¶ 31} "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." Id., at syllabus. The court ruled that the failure to make an inquiry required reversal. Id., at 19.
 {¶ 32} In this case, Harris did not utter any complaint regarding trial counsel until the sentencing hearing. In Deal, the defendant raised his allegations during trial. Id. We conclude that this fact sufficiently distinguishes this case from the facts in Deal, and obviates the need to reverse the conviction.
 {¶ 33} Our conclusion is in accord with a decision of the Ninth District Court of Appeals in State v. Bruton (Nov. 4, 1981), Summit App. No. 10036. In Bruton, the defendant's complaint was made after a jury verdict was rendered. In declining to find reversible error regarding the trial court's failure to make an inquiry, the court stated:
 {¶ 34} "The logic of defendant's claim, if accepted, would mean that all complaints of this type, even those made well after verdicts of conviction were recorded, must result in court inquiry or, absent such inquiry, reversal of the trial judgment. We reject such logic * * *." Id.; see also, State v. Lawrence (Sept. 28, 1993), Ross App. No. 93 CA 1940.
 {¶ 35} We approve and follow the holding in State v. Bruton, supra. Unlike an expression of dissatisfaction concerning the performance of trial counsel uttered during the guilt phase of the trial, an expression of dissatisfaction following conviction on all counts is unremarkable. It is not uncommon for a criminal defendant, or any other litigant, for that matter, to feel, and to express, sentiments of dissatisfaction with trial counsel after an adverse verdict has been rendered. There is no relief that the trial court can afford the criminal defendant at that point other than a new trial, and the convicted criminal defendant may seek that relief through an appropriate motion, through an appeal, or through a petition for post-conviction relief, if the relief is warranted.
 {¶ 36} Harris's Second Assignment of Error is overruled.
 IV {¶ 37} Harris's Third Assignment of Error provides:
 {¶ 38} "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 39} In his final assignment of error, Harris argues that even if the errors he has alleged herein are harmless individually, their cumulative effect has resulted in an unfair trial.
 {¶ 40} Separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal,87 Ohio St.3d 378, 397, 2000-Ohio-448. In order to find cumulative error, we first must find that multiple errors were committed at trial. Id. at 398.
 {¶ 41} In our review of Harris's previous assignments of error we have found no error. Therefore, his claim of prejudice arising from cumulative error must fail. The Third Assignment of Error is overruled.
 V {¶ 42} All of Harris's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
Brogan and Wolff, JJ., concur.
[1] Throughout the commission of the crime, Harris was referred to as "Tony" by the two other perpetrators.