[Cite as *State v. Jones*, 2018-Ohio-2330.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 27506 & 27507 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-2227 & |
| | : | 2015-CR-2564 |
| WAYMON JONES | : | |
| | : | (Criminal Appeal from Common Pleas |
| Defendant-Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of June, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, and MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
  Attorneys for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} This matter comes before us on two consolidated appeals by defendant-appellant Waymon Jones, Jr.

{¶ 2} In appellate case number 27506, Jones appeals from his conviction and sentence on one count of murder, two counts of felonious assault, one count of having a weapon while under disability, and two firearm specifications. In appellate case number 27507, Jones appeals from the trial court's revocation of community-control sanctions and its imposition of an eleven-month prison sentence.

{¶ 3} Although Jones has appealed from two judgments, his appellate brief does not address the community-control case. With regard to the homicide case, he advances two assignments of error. First, he challenges the legal sufficiency and manifest weight of the evidence to support his conviction on the two felonious assault counts. Second, he contends the trial court erred in overruling his motion to suppress photo-identification evidence.

{¶ 4} The charges against Jones stemmed from a shooting that occurred on the evening of July 8, 2016. Jones was a passenger in a car driven by a friend, Rontae Peaks. They were planning to meet two other people, Erwin Briggs and Joshua Cohen, at a residence on Leland Avenue to spend the evening together. Peaks and Jones arrived first after stopping to purchase alcohol and a bottle of "SoBe" drink. Briggs attempted to drive Cohen to the location, but they had trouble finding it. Cohen became frustrated and had several telephone conversations with Jones about the meeting place. When Briggs and Cohen finally arrived around dusk, an argument ensued. Briggs and Peaks testified at trial that Cohen exited the car and confronted Jones about the directions that had been

provided. Threats were exchanged, and Jones pulled a handgun from his pants. Peaks described the weapon as a semi-automatic, nine-millimeter with an extended magazine. Briggs and Peaks both testified that Jones proceeded to fire a number of shots at Cohen, who was struck multiple times. He collapsed in the street and later died at the hospital. Peaks testified that Jones was drunk and "shooting at everybody." Peaks recalled seeing Jones fire at Briggs. Peaks also testified that he heard bullets going past his own head as he ran away. For his part, Briggs testified that he ran away after Jones fired a shot at him. As Briggs ran, he heard Jones fire several more shots.

{¶ 5} Shortly after the shooting stopped, Briggs and Peaks returned to the scene. When police arrived, Jones was gone. Peaks identified Jones as the perpetrator and provided a detective with a picture of Jones from his cell phone. Briggs subsequently viewed a photospread at the police department and circled Jones' picture. At that time, he described the certainty of his identification as being seven and one-half to eight out of ten. At trial, Briggs claimed he really was absolutely certain but wanted to "keep it in the street" and deal with Jones himself. On cross examination, Briggs admitted telling police and the 911 dispatcher that he did not know who had shot Cohen. He also claimed that he had identified Jones in the photospread as someone he had seen in the neighborhood, not necessarily as the shooter. On redirect examination, however, Briggs acknowledged telling the police officer administering the photospread: "I want to say it's him." Briggs made this statement in reference to Jones' picture, and he meant that he wanted to say it was Jones who had done the shooting. (Tr. Vol. II at 441).

{¶ 6} Investigators recovered ten shell casings from the scene. The nine-millimeter casings were located in a grassy area, on a sidewalk, and in the street. (Tr. Vol. III at

567). A detective searching the area used a flashlight because it was dark outside. (Tr. Vol. IV at 641). Testing established that all of the shell casings were fired from the same weapon. Witness Dayza Snow testified that she been "trying to get into a relationship" with Jones in July 2016. She recalled him having a nine-millimeter handgun at her apartment the day before the shooting. According to Snow, it was stored in a kitchen cabinet above her refrigerator. While she was out with Jones the evening before the shooting, he wanted to return to her apartment to get the gun. She refused, and the two parted company. Snow later returned to her apartment to find her patio door broken and the gun gone.

{¶ 7} During their investigation, police found Jones' fingerprints and DNA on a SoBe drink bottle left at the shooting scene, and his fingerprint was found on the passenger door of the car driven by Peaks. In addition, Briggs and Peaks both testified about Jones making telephone calls to them after his arrest. Peaks testified that Jones tried to pay him not to come to court. Briggs testified that Jones asked whether he was going to appear in court and testify.

{¶ 8} Based on the evidence presented, a jury found Jones guilty of all of the charges and specifications against him. After merging several counts and specifications for purposes of sentencing, the trial court imposed an aggregate sentence of forty years to life. It also imposed a consecutive sentence of eleven months for violating community control sanctions in a prior case. It imposed a second consecutive sentence of fifteen months for violating post-release control in yet another case. The combined result was a total prison term of forty-two years and two months to life. (Doc. #132 at 2).

{¶ 9} In his first assignment of error, Jones challenges the legal sufficiency and

manifest weight of the evidence to support two felonious-assault convictions.

{¶ 10} Jones was convicted of felonious assault for causing or attempting to cause physical harm to Peaks and Briggs with a deadly weapon. To obtain the convictions, the Stated relied primarily on the testimony of Peaks and Briggs, both of whom testified that Jones fired shots at them after shooting Cohen. Jones argues, however, that the testimony of Peaks and Briggs is inconsistent and lacks credibility. He asserts that the two men "contradict one another and themselves multiple times" and that their testimony "flouts common sense." Jones also contends the physical evidence does not support a finding that he shot at Peaks and Briggs. He notes that investigators found ten shell casings at the scene and that Cohen's autopsy revealed entrance wounds from at least eight and possibly nine different bullets.[1] According to Jones, that leaves at most two unaccounted-for bullets that could have been fired at Peaks and Briggs, who claimed that he fired *multiple* shots at each of them. Jones contends he could not have fired multiple shots at Peaks and Briggs with only two remaining shots. Therefore, he asserts that his felonious-assault convictions pertaining to Peaks and Briggs are based on legally insufficient evidence and are against the weight of the evidence.

{¶ 11} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

---

[1] Although Cohen had nine bullet entrance wounds on his body, one of them may have been a double entry by a single bullet. (Tr. Vol. II at 258, 265-266).

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} With the foregoing standards in mind, we conclude that Jones' felonious-assault convictions are supported by legally sufficient evidence and are not against the weight of the evidence. Having reviewed the testimony of Peaks and Briggs, we see no meaningful inconsistencies or contradictions, and Jones has not directed us to any specific issues. As for the shell casings, Jones' attorney argued to the jury that "[t]he casings don't match the number of shots" allegedly fired. (Tr. Vol. IV at 699). That being so, counsel suggested that no one "was actually shooting at either Erwin Briggs or Rontae Peaks." (*Id.*). In response, the prosecutor pointed out that it was dark outside when a

detective searched for shell casings with a flashlight. (*Id.* at 707). The prosecutor suggested that investigators simply did not find all of the casings. (*Id.*). Even defense counsel acknowledged in closing that "you're going to see things in daylight that you can't see at night with a flashlight." (*Id.* at 690). The jury also heard testimony that shell casings may bounce, roll, or be kicked around, and an evidence technician confirmed that it was dark outside when the casings were collected after 10:00 p.m. (Tr. Vol. II at 273; 294, 338-339).

{¶ 14} Based on the evidence presented, the jury reasonably could have determined that Peaks and Briggs were being truthful about Jones firing at them and that not all of the shell casings were recovered at the scene. The testimony of Peaks and Briggs, if believed, is legally sufficient to support Jones' convictions. The convictions also are not against the manifest weight of the evidence. Failure to recover all of the shell casings is a plausible rebuttal to Jones' argument about the number of shots fired, and the jury was entitled to credit it. The jury did not clearly lose its way and create a manifest miscarriage of justice in finding Jones guilty. This is not an exceptional case in which the evidence weighs heavily against his felonious-assault convictions. The first assignment of error is overruled.

{¶ 15} In his second assignment of error, Jones contends the trial court erred in overruling his motion to suppress Briggs' photo identification of him as the shooter.

{¶ 16} As set forth above, Briggs viewed a photospread at the police department and circled Jones' picture. Jones argues, however, that the identification procedure was unduly suggestive of his guilt. He asserts that the officer who administered the photospread referred to him as "the suspect" and wrote "the suspect" near his picture.

Jones claims these actions suggested to Briggs whose picture to select. Jones further argues that the identification itself was unreliable because Briggs did not know him very well and previously had denied knowing the identity of the shooter.

**{¶ 17}** "When a witness has been confronted with a suspect before trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances." *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19. "The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. If the pretrial confrontation procedure was not unfairly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required." (Citations omitted.) *Id.*

**{¶ 18}** The defendant "bears the burden of showing that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and that the identification itself was unreliable under the totality of the circumstances." *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *2 (Feb. 22, 2002), quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "We review a trial court's refusal to suppress a pretrial identification for an abuse of discretion." *State v. Harmon*, 2017-Ohio-8106, __ N.E.3d __, ¶ 22 (2d Dist.), citing *State v. Wilson*, 2d Dist. Montgomery No. 22624, 2009-Ohio-1038, ¶ 19.

**{¶ 19}** Unlike most cases involving challenges to photospreads, Jones does not

argue that the array Briggs viewed was suggestive. Rather, he contends police officer Jennifer Stack, who administered the array, tainted the process through her actions. Stack testified during the suppression hearing that detective David House asked her to act as a blind administrator to show Briggs a photospread. Although Stack had heard Jones' name mentioned in connection with the case, she had no idea what he looked like and did not know whether his picture was in the photospread. In her notes accompanying the photospread, Stack attempted to write down what Briggs told her as he viewed the photographs. With regard to photo number two, which was Jones' picture, Stack wrote: "Seen this guy before at apartments." She also wrote, "Behind hookah bar," and "I want to say it's him." (Suppression Tr. at 13, 21). Briggs circled Jones' photograph and initialed it. (*Id.* at 15). Stack filled in a witness confidence form, indicating that Briggs had identified Jones as "the suspect." (*Id.* at 14). Briggs indicated that his certainty in the identification was 7.5 or 8 out of 10. (*Id.*). On cross examination, Stack did not remember whether she was the one who first referred to Jones or his picture as "the suspect," but she did not deny doing so. (*Id.* at 22). She also acknowledged that Briggs never actually stated that Jones was the person he saw doing the shooting. (*Id.*). Instead, Briggs "just said that's the guy he recognized in the area[.]" (*Id.*).

{¶ 20} After hearing the evidence, the trial court expressed its belief that the photospread was not unduly suggestive. The trial court tentatively opined that any dispute about whether Briggs had identified Jones "as the individual accused of the crime" or as "an individual with whom Mr. Briggs happened to be familiar" went to the weight of the identification, not its admissibility. (*Id.* at 56). Upon considering the issue further, the trial court adhered to its initial impression and overruled the suppression motion. It reasoned

in part: "The photo array administered to Mr. Erwin Briggs was created in a manner to eliminate or minimize suggestiveness. Officer Stack administered the photo identification as a blind administrator. Neither the six pack of photographs nor the administration of the photo spread contained suggestiveness." (Doc. #43 at 1).

{¶ 21} Upon review, we see no abuse of discretion in the trial court's ruling. The photospread was not suggestive of Jones' guilt. Any question about whether Briggs had identified Jones as the shooter or merely as someone he had seen in the neighborhood went to the weight and significance of the identification rather than its admissibility. At trial, Stack and Briggs were examined and cross examined about the issue. For his part, Briggs asserted that he had identified Jones as someone he had seen in the neighborhood. (Tr. Vol. II at 438-439). With regard to his statement, "I want to say it's him," Briggs clarified that he meant he wanted to say it was Jones who did the shooting. (Id. at 441). In any event, we believe the trial court properly treated the issue as one involving the weight of the evidence, which was for the jury to resolve.[2] The second assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

---

[2] We note that Jones' assignment of error would fail even if we were to find the photospread unduly suggestive based on uncertainty about the meaning and significance of Briggs' identification. Briggs explained at trial that he knew Jones, having met him through Joshua Cohen, a mutual friend, the month before the shooting. (Tr. Vol. II at 409, 425). Given that Briggs personally knew Jones, any question about the meaning of Briggs' pretrial identification could not have impacted the outcome of the case. Briggs testified at trial that he was absolutely sure Jones was the shooter. He explained that he had been less forthcoming during the pretrial photo identification because he had "wanted to keep it in the street" and catch Jones himself. (Id. at 425). Jones also was identified as the shooter, both before trial and at trial, by Peaks, who knew Jones and was riding in a car with him just before the shooting.

DONOVAN, J. and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Heather N. Jans
Michael J. Scarpelli
Jeffrey T. Gramza
Hon. Mary Lynn Wiseman