[Cite as *State v. Heaggans*, 2018-Ohio-4328.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106485

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JAYSON HEAGGANS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605022-B

**BEFORE:** McCormack, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 25, 2018

**ATTORNEY FOR APPELLANT**

James J. Hofelich
614 W. Superior Ave., Suite 1310
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Edward D. Brydle
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113




TIM McCORMACK, J.:

{¶1} Defendant-appellant Jayson Heaggans ("Jayson") appeals his burglary convictions. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶2}   Jayson, together with his brother Danny Heaggans ("Danny"), was indicted on April 21, 2016, relating to their home rental operation.  Jayson was indicted on two counts of burglary, in violation of R.C. 2911.12(A)(3), and one count of theft, in violation of R.C. 2913.02(A)(3).  Danny was indicted on the aforementioned counts, along with 18 other counts of burglary, theft, petty theft, and receiving stolen property.

{¶3} These charges were the result of several incidents in which Danny and Jayson would break into vacant homes, change the locks, and proceed to rent the homes to unsuspecting tenants. The charges against Jayson stem from two particular incidents, each involving homes in Bedford, Ohio.

{¶4} The first incident involved a home owned by the city of Bedford as part of its Neighborhood Stabilization Program, in which it would purchase vacant homes, rehabilitate the properties, and sell them. On July 18, 2014, the city's building commissioner, Calvin Beverly ("Beverly"), was showing the city's properties to a new employee, Richard Hickman ("Hickman"), when he observed vehicles parked in the driveway of the city-owned house at 361 West Grace Street. When Beverly observed a man, later identified as Danny, come out of the house, he approached Danny and asked what he was doing on city property. Danny stated that his company, Second Chance Living, was making repairs on the home in order to get it ready to rent to a homeless veteran. At the time, Beverly was the only person responsible for authorizing repairs on the homes owned by the city, and he testified that he had not authorized any such repairs. Beverly went inside the home, where he encountered two other men, one of whom he subsequently identified as Jayson Heaggans. Beverly instructed the men to gather their belongings and leave, and he proceeded to have Hickman take some photographs of the house and the cars parked outside of the house.

{¶5} Danny gave Beverly a business card before leaving the house. Subsequently, Bedford city manager Michael Mallis ("Mallis") called Danny to arrange a meeting. Danny and Jayson met with Mallis and Beverly and described their company, Second Chance Living, and again stated that they had been making repairs to the home at 361 West Grace Street in order to prepare it to rent to a veteran.

**{¶6}** The second incident involves a house at 20 Leyton Road, also in Bedford, Ohio. Al Kriss ("Kriss") owned multiple properties, including this home, as part of his real estate business. On August 26, 2014, Kriss performed a routine check on this property, which was then vacant and available to be rented in a rent-to-own program. Several days later, on August 29, 2014, Kriss checked on the property again. He testified that he pulled in the driveway and saw a little boy look out the window from inside the home. Kriss then encountered a man, John Banks ("Banks"), who told Kriss that he had rented the property. Kriss noticed that a lockbox and "rent to own" sign that had previously been on the property had been removed. Banks called Danny, and shortly thereafter Danny and Jayson arrived at the home.

**{¶7}** At trial, Banks testified that he needed a place to live with his girlfriend and her children, and Jayson had told him about the Leyton house. Jayson presented himself to Banks as the owner of the house, and Banks subsequently moved into the home. Banks had signed a lease, but no money had changed hands in relation to the property because Banks was expecting to get an Eden housing voucher, but the paperwork had not gone through as of August 29. After the encounter with Kriss, Banks moved his belongings out of the house and testified that he has not spoken to Jayson or Danny since.

**{¶8}** Kriss contacted the Bedford police about the incident, and Bedford detective Buck Kidd ("Kidd") initiated an investigation into the Heaggans brothers. Danny was ultimately arrested on October 16, 2014. A search of Danny's car following his arrest produced documents relating to other homes, box cutters, keys, a broken lockbox, and documents and an ID with Jayson's name.

**{¶9}** As part of the investigation, Bryan Byard ("Byard"), who was then the sergeant in charge of the Bedford Police Detective Bureau, presented a six-person photo array to Beverly.

Beverly identified Jayson as the person with whom he had spoken in relation to the property at 361 West Grace.

{¶10} The aforementioned indictment was the result of this investigation.

{¶11} On May 11, 2017, Danny pleaded guilty to amended charges. On June 20, 2017, he was sentenced to two years of community control.

{¶12} Jayson proceeded to a jury trial on September 11, 2017. At the close of the state's case, Jayson made a Rule 29 motion. In response, the state dismissed the misdemeanor theft count. The court denied the motion as it related to the two burglary counts. After presenting several witnesses on his own behalf, including Danny and another brother, Gerald Heaggans, the defense rested. Jayson renewed his Rule 29 motion, and the court denied this motion. The jury returned a guilty verdict as to both burglary counts.

{¶13} The court held a sentencing hearing on October 24, 2017. At this hearing, the court asked Jayson about the inconsistent personal details he provided to court employees as to his military service. He was unresponsive, and the court called medical services for Jayson before continuing the hearing to a later date.

{¶14} On October 27, 2017, the court again confronted Jayson about his military service, and he was unable to explain the discrepancies in his statements to court employees. The court sentenced Jayson to two years in prison on each count, to be served concurrently.

{¶15} Jayson appeals his convictions, presenting four assignments of error for our review.

**Law and Analysis**

**I. Ineffective Assistance of Counsel**

**{¶16}** In his first assignment of error, Jayson argues that he was denied the right to effective assistance of counsel. Specifically, Jayson argues that he was prejudiced by his counsel's failure to file a motion to suppress the photo identification evidence and failure to object to hearsay testimony offered by Beverly.

**{¶17}** To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. at 687-688.

**{¶18}** Failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28, citing *State v. Finch*, 5th Dist. Licking No. 11-CA-114, 2012-Ohio-4727, ¶ 28. In order to establish that a motion to suppress would have been successful, a defendant is required to show that there was a basis to suppress the evidence in question. *Id*.

**{¶19}** "An identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process." *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 63, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Courts employ a two-prong analysis to determine whether a challenged identification is admissible. *Id*. First, the court considers whether the defendant has shown that the identification procedure was unduly suggestive. If the defendant

can establish this, the court then considers whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *Id.*, citing *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19, citing *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997).

{¶20} Jayson argues that because Byard failed to comply with R.C. 2933.83 in administering the photo identification to Beverly, the evidence of Beverly's photo identification should have been suppressed. We disagree. R.C. 2933.83(B) outlines the statutory requirements for the administration of photo lineups. These requirements include the use of a blind or blinded administrator and the creation of a written record containing identification and nonidentification results. R.C. 2933.83(C) goes on to discuss the consequences of noncompliance with any of these statutory requirements. R.C. 2933.83(C)(1) and (2) provide that evidence of a failure to comply with any of these provisions "shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup" and "shall be admissible in support of any claim of eyewitness misidentification resulting from or related to the lineup." Further, R.C. 2933.83(C)(3) provides that when evidence of noncompliance is presented at trial, "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to that lineup."

{¶21} Here, Byard testified, and the state concedes, that the statutory procedures were not followed in the administration of the photo lineup to Beverly. Specifically, Byard was not a blind or blinded administrator, as he was familiar with the investigation and had participated in Danny's arrest. In addition, Byard did not make a record of Beverly's identification of Jayson.

While this noncompliance would have been considered by the court in adjudicating a motion to suppress, we do not believe it is sufficient to warrant suppression.

{¶22} The first step of our analysis in considering whether the photo identification would have been suppressed is determining whether it was unduly suggestive. While the administration of the photo lineup in this case blatantly disregarded the relevant statutory requirements, Jayson does not argue, and we cannot conclude, that this noncompliance rendered the photo lineup unduly suggestive. A photo array is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208, citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001). "Suggestiveness depends on several factors, including the size of the array, its manner of presentation, and its contents." *Wills*, 120 Ohio App.3d at 325, 697 N.E.2d 1072, citing *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir.1991). Here, nothing about the size and contents of the photo array would have steered Beverly to one suspect. Byard presented Beverly with six photos of different men, all with similar complexions, hairstyles, and facial hair. Further, the photos were all the same size, and Jayson's photo does not appear to stand out in any way from the other five photos. Therefore, we must find that the manner of presentation was suggestive in order to conclude that the photo identification was unduly suggestive.

{¶23} A blind administrator is an individual who does not know the suspect's identity. Although Jayson argues that Byard knew his identity when he administered the photo array, this is not entirely clear from the record. Byard testified that he was unsure if he assembled the photo lineup or if Kidd assembled the lineup and gave it to him. Even assuming that Byard knew Jayson's identity when he administered the photo lineup, there is no evidence that Byard steered Beverly toward Jayson in any way. The record, including testimony from both Beverly

and Byard, contains nothing to suggest that Byard's potential knowledge of the suspect's identity in any way influenced Beverly's identification. Nothing in the record supports an inference that Byard suggested Jayson's identity to Beverly or subsequently confirmed Beverly's identification of Jayson.

{¶24} Because Jayson is unable to satisfy the first prong of the test and establish that the photo identification was unduly suggestive, it is not necessary to consider the second prong. Even if we were able to infer from the record that the identification was unduly suggestive, however, we note that the totality of the circumstances shows that the identification was nevertheless reliable. At trial, Beverly testified that Jayson was at 361 West Grace Street when he encountered Danny, and that Jayson and Danny both attended the meeting at city hall about a week after this encounter. By the time Beverly identified Jayson in the photo array, Beverly had seen Jayson on multiple occasions for an extended period of time. In the case of the meeting at city hall, he was engaged in an intimate conversation with Jayson, and the premise of this conversation was that both Danny and Jayson had been on city property without permission. Finally, Beverly made an in-court identification of Jayson when asked who was at 361 West Grace Street.

{¶25} Because we find that a motion to suppress the photo identification would not have been successful, we cannot conclude that Jayson received ineffective assistance of counsel on this basis.

{¶26} Jayson also argues that he received ineffective assistance of counsel based on his counsel's failure to object to hearsay testimony offered by Beverly. Jayson argues that Beverly's testimony as to the conversation he had with Danny at 361 West Grace is impermissible hearsay

because it was offered by the state in an attempt to show a criminal scheme that Jayson and Danny were operating.

{¶27} A failure to meet either prong of the *Strickland* test defeats a claim for ineffective assistance. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). Here, even if defense counsel had objected to the testimony in question, and even if those objections had been properly sustained based on the rules of evidence, the record contains substantial other evidence to support Jayson's convictions. Beverly testified that Jayson had been at 361 West Grace without permission. Photos of the repairs made to the house were introduced into evidence, and Danny testified that those repairs were made as part of the plan to turn the house over to a tenant. All of the testimony from current and former city employees supports the conclusion that neither Jayson nor Danny were authorized to be inside the house at 361 West Grace Street, let alone make any repairs to that property. Finally, there was testimony from Beverly, Mallis, and Danny as to the meeting that Jayson attended at city hall. Again, this meeting was premised on the brothers' presence at 361 West Grace Street, and Danny's testimony was consistent with that of Beverly's as to the nature and subject of that meeting. Therefore, counsel's failure to object to Beverly's testimony about his initial conversation with Beverly cannot be said to have prejudiced Jayson. For these reasons, we overrule this assignment of error.

## II. R.C. 2933.83(C)(3)

{¶28} In his second assignment of error, Jayson argues that the trial court erred when it failed to issue the proper jury instruction under R.C. 2933.83(C)(3), which provides:

When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification from or related to the lineup.

As discussed above, this subsection is clearly applicable to Jayson's trial because Byard testified that he failed to follow the relevant statutory requirements when he administered the photo array to Beverly.

{¶29} At trial, the jury instructions were discussed by the state, defense counsel, and the court, and at no point did defense counsel object to the jury instructions. The failure to object to jury instructions is a waiver of the issue on appeal. Crim.R. 30(A) states, in relevant part:

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the ground of the objection.

As Jayson waived this issue by failing to object to the jury instructions, we review the trial court's failure to give the R.C. 2933.83(C)(3) instruction for plain error. "Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right." *State v. Gray*, 8th Dist. Cuyahoga No. 92303, 2010-Ohio-240, ¶ 17, citing *State v. Long*, 53 Ohio St.2d 91, 94, 372 N.E.2d 804 (1978). We take notice of plain error only in exceptional circumstances to avoid a miscarriage of justice. *Long* at 95. Further, the party asserting the error bears the burden of demonstrating plain error. *State v. Crawford,* 2016-Ohio-7779, 73 N.E.3d 1110, ¶ 13 (8th Dist.), citing *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 84 (8th Dist.).

{¶30} Here, Jayson makes no argument as to the consequence of the trial court's failure to give the R.C. 2933.83(C)(3) instruction, let alone how or to what degree this failure impacted his rights or created a miscarriage of justice. We note that, although the trial court did not give the

explicit statutory instruction regarding noncompliance, it did instruct the jury as to the testimony of identifying witnesses as follows:

> Now, some things that you may consider in weighing the testimony of an identifying witness are this: The capacity of the witness; that is, the age or the intelligence, any defective senses, and the opportunity that the witness had to observe. The witness' degree of attention at the time that he or she observed the offender. The accuracy of the witness' prior description or identification. Whether the witness had the occasion to observe the defendant in the past. The interval of time between the event and the identification, and all surrounding circumstances under which the witness' identified including deficiencies, if any, in any lineup, photo display, or one on one.

In light of this instruction, and the extensive cross-examination of Byard as to his noncompliance with R.C. 2933.83, we cannot conclude that the trial court's failure to issue a more explicit jury instruction constitutes plain error.   This assignment of error is overruled.

**III. Sufficiency**

{¶31} In Jayson's third assignment of error, he argues that the trial court erred when it denied his Crim.R. 29 motion because the charges were not supported by sufficient evidence. Specifically, he argues that while "significant" evidence was presented that Danny committed burglaries, there was insufficient evidence that he committed any crimes.   Jayson asserts that the only evidence connecting him to the home at 361 West Grace Street is Beverly's identification, which he asserts is unreliable.   With respect to the Leyton property, Jayson points to Danny's testimony that Jayson was unaware of the status of the home when he rented it to Banks.

{¶32} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction.   *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶33} We note that, despite Jayson's assertion that Beverly's identification was unreliable, we reached the opposite conclusion in the foregoing analysis. Further, Jayson is incorrect that this identification is the only evidence connecting him to the Grace property. In addition to Beverly's in- and out-of-court identifications of Jayson, Jayson was also present at the city hall meeting where he and Danny attempted to defend their unlawful presence at 361 West Grace Street.

{¶34} With respect to the Leyton house, Danny's testimony that Jayson was ignorant to the status of the house — that is, that it was owned by Al Kriss — cannot be said to show that Jayson's conviction was supported by insufficient evidence. Kriss and Banks both testified that Jayson presented himself as the owner of the property, even as he was being confronted by the actual owner of the property. Viewing the evidence in the light most favorable to the prosecution, we find that the state met its burden and any rational trier of fact could have found Jayson guilty beyond a reasonable doubt.

## IV. Manifest Weight

{¶35} In his fourth assignment of error, Jayson argues that his conviction was against the manifest weight of the evidence.

{¶36} Unlike a challenge to the sufficiency of evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight

challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶37} After a thorough review of the record, we conclude that the jury did not clearly lose its way, as Jayson's convictions were not against the manifest weight of the evidence. Here, Jayson reiterates his argument that the weight of the evidence shows only that Danny was engaged in a criminal enterprise. Given the totality and nature of the evidence, we disagree. The testimony of Danny and Gerald Heaggans was inconsistent and even to the extent that it could be interpreted as exculpatory, it was not so exculpatory as to negate the balance of the evidence presented by the state.

{¶38} Therefore, this assignment of error is overruled, and the convictions are affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR